## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Watkins Incorporated,<br><br>        Plaintiff,<br><br>v.<br><br>McCormick and Company, Incorporated,<br><br>        Defendant. | Court File No._____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Watkins Incorporated, for its complaint against McCormick and Company, Incorporated, states and alleges as follows:

## THE PARTIES

1.      Watkins Incorporated ("Watkins") is a family-owned Delaware corporation with its headquarters and principal place of business in Winona, Minnesota.  Watkins was founded in 1868 by J.R. Watkins in Plainview, Minnesota.  By 1895, Watkins began selling tins of black pepper to consumers.  Today, Watkins produces and sells a number of health care products, bath and body products, home products, and gourmet spices and other cooking and baking products, including ground black pepper.  Watkins operates throughout the United States and internationally.

2.      Upon information and belief, McCormick and Company, Incorporated ("McCormick") is a publicly-traded Maryland corporation with its headquarters and principal place of business in Sparks, Maryland.  McCormick is one of the largest producers of spices, herbs, extracts, blends, sauces, and marinades in the world, and it

owns a number of domestic and foreign brands.  McCormick is the largest spice distributor in the United States.

## JURISDICTION AND VENUE

3.       This is an action for unfair competition and deceptive trade practices in violation of the Lanham Act, the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*, the California Unfair Competition and Business Practices Act, Cal. Bus. & Prof. Code § 17200 *et seq.,* the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.*, and the common law.

4.       This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 15 U.S.C. § 1125 (actions arising under the Lanham Act), and 28 U.S.C. § 1338(b) (pendent unfair competition claims).  The Court also has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1367(a).

5.       Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(b) because McCormick is subject to personal jurisdiction in this judicial district and, on information and belief, has committed acts of unfair competition and deceptive trade practices in this District.

## FACTUAL BACKGROUND

6.       On information and belief, black pepper is grown in India, Brazil, Indonesia, Malaysia, Sri Lanka, Vietnam and certain other locations in the world today. The United States is the largest importer of pepper spice.

7.     On information and belief, the total market in the United States for all peppers today is estimated to be approximately $425 million in total annual sales. McCormick sales of black pepper tins (both the McCormick brand as well as McCormick sales using retailer private labels) are estimated to be approximately 70% or more of total domestic black pepper tin sales.

8.     McCormick has been recognized by the United States Federal Trade Commission ("FTC") as the world's largest spice company and a dominant seller in the marketplace.

9.     McCormick is a sophisticated and experienced marketplace participant and has settled enforcement actions brought against McCormick by the FTC, including a matter in which the FTC alleged discriminatory pricing and improper agreements requiring substantial shelf space from retailers.  Specifically, in 1999, the FTC investigated McCormick for drafting illegal contracts for shelf space with major supermarket chains and discriminatory pricing.  McCormick entered into a settlement with the FTC in 2000.

**Ground Black Pepper Consumer Distribution**

10.     On information and belief, McCormick has processed and distributed ground black pepper for decades.

11.     On information and belief, for decades, McCormick has sold ground black pepper in metal tins that have become widely recognized by consumers.  These non-transparent metal tins came in different sizes:  (i) a small metal tin measuring approximately 3 1/16" tall, 1 5/16" deep, and 2 5/16" wide, which was substantially filled

to capacity consistent with industry norms with 2 ounces of ground black pepper (the "Small Tin"); (ii) a medium metal tin measuring approximately 3 10/16" tall, 1 9/16" deep, and 2 13/16" wide, which was substantially filled to capacity consistent with industry norms with 4 ounces of ground black pepper (the "Medium Tin"); and (iii) a large metal tin measuring approximately 4 10/16" tall, 2 4/16" deep, and 3 5/16" wide, which was substantially filled to capacity consistent with industry norms with 8 ounces of ground black pepper (the "Large Tin").  The metal tins are not transparent.

12.     On information and belief, over the decades, these tin sizes and fills became widely used throughout the industry and the marketplace.  Many ground black pepper manufacturers sell ground black pepper in substantially the same size tins.  The metal tins, including the size and shape, as well as the packaging and appearance, are used by pepper manufacturers to promote and advertise their products.

13.     On information and belief, as retailers and consumers became accustomed and conditioned to the traditionally-sized tins and fills sold by McCormick and others, they came to rely on the consistency of a known tin size and made purchasing decisions based on the readily apparent volume of the non-transparent tin.

## McCormick Begins Slack-Filling Traditionally Sized Tins

14.     On information and belief, in or around January or February 2015, McCormick intentionally began shipping tens of millions of tins of ground black pepper that contained substantially less (25%) ground black pepper than the traditional-sized tins had historically contained.  However, rather than change the size of the tin from the traditional size to a new size that reflected the reduced fill, McCormick deceptively and

4

misleadingly continued to use the same traditional-sized tins that had been used for decades, giving the false impression that nothing had changed.

15.     McCormick non-transparent tins of ground black pepper are now approximately 25% empty, which constitutes nonfunctional "slack-fill."

| Tin Size | McCormick Traditional Fill | McCormick Slack Fill |
|----------|----------------------------|----------------------|
| Small    | 2 ounces                   | 1.5 ounces           |
| Medium   | 4 ounces                   | 3 ounces             |
| Large    | 8 ounces                   | 6 ounces             |

16.     Photo A below shows the traditional McCormick Small Tins with the 1.5-ounce slack-fill (on the left) and the traditional 2-ounce fill (in the middle), along with the Watkins tin with a 2-ounce fill.  Although the tins note in small print the actual weight of ground black pepper contained in the slack-filled tins, consumers are not otherwise told of the decrease in ground black pepper from the traditional fill or that the tin contains a significant void.  On information and belief, consumers rely upon the traditional size of the tins as the basis of making a purchasing decision and believe the tins are effectively full, as they have been for decades.  The McCormick Small Tin with the 1.5-ounce slack-fill (on the left) falsely appears to contain the same amount of ground black pepper as the other two tins with 2-ounce fills.

**Photo A**



17.     Photo B below shows the Watkins tin with a 4-ounce fill along with the McCormick Medium Tins with the traditional 4-ounce fill (in the middle) and the 3-ounce slack-fill (on the right).  The size of the McCormick Medium Tin with the 3-ounce slack-fill (on the right) deceptively and misleadingly appears to have the same amount of ground black pepper as the other two tins with 4-ounce fills.

**Photo B**



18.   Photo C below shows the traditional McCormick Large Tins with the 8-
ounce traditional fill, the 6-ounce slack-fill, along with the Watkins with a 6-ounce fill.
The McCormick Large Tins with an 8-ounce fill (on the left) was marketed for decades.
McCormick's use of the same McCormick Large Tin with a 6-ounce fill with
nonfunctional slack-fill (in the middle) gives the deceptive and misleading impression
that there is more ground pepper in the tin than in the Watkins Tin (on the right in Photo
C) which also has six ounces of ground black pepper.

**Photo C**



19.     On information and belief, retailers and consumers are misled into believing that they are buying a larger volume of ground black pepper than is contained in the McCormick slack-filled tins.

20.     On information and belief, in many or most instances, McCormick intentionally maintained the price of its standard sized tins, notwithstanding the significant reduction in the amount of ground black pepper contained in the traditional tin, which had the effect of further adding to the perception that nothing had changed.  It appears that millions, if not tens of millions, of these McCormick slack-filled tins have replaced traditional-fill tins in virtually every retailer throughout the United States that stocks McCormick products.

21.     While in most instances it appears that the slack-filled tins have replaced the traditional-fill tins on retailer shelves (thereby precluding any notice to the consumer of the change), in at least one location, the same sized McCormick tins with different amounts of ground black pepper are selling for the exact same price, further misleading the consumer.  *See* Photo D below (photo showing two McCormick's Small Tins, one containing the traditional fill of 2-ounces and the other containing the new slack-filled amount of 1.5 ounces, with a shelf label promoting one price).

**Photo D**



22.     On information and belief, McCormick intentionally kept the tin the same size, with the same price, notwithstanding the 25% decrease in ground black pepper fill, in a manner that misleads retailers and consumers.  Although the tins note in small print the actual weight of ground black pepper contained in the slack-filled tins, consumers are not otherwise told of the decrease in ground black pepper from the traditional fill or that the tin contains a significant void.  Consumers rely upon the traditional size of the tins as the basis of making a purchasing decision and believe the tins are effectively full, as they have been for decades.

23.     On information and belief, consumers are also deprived of making fair comparative shopping decisions.  Side-by-side, McCormick Small Tins and Medium Tins appear to be identical in size to the comparable Watkins tins, leading consumers to the reasonable assumption (and accurate until McCormick began slack-filling their traditionally sized tins) that they contain the same quantity of pepper.  In fact, the McCormick slack-filled Small Tins and Medium Tins contain less ground pepper than the comparable Watkins tin.  The McCormick Large Tin appears to contain more than the Watkins 6-ounce tin, when in fact they both contain 6 ounces of ground black pepper. The blatant use of slack-fill is misleading and deceptivel to consumers and retailers.  *See* Photos A-C above (photos showing McCormick tins with traditional fill, McCormick slack-filled tins, and Watkins tins).

24.     Based on sales data, it appears that McCormick has likely shipped and sold tens of millions of these deceptive and misleading slack-filled tins since January or February 2015, constituting tens of millions of dollars of ground black pepper.

25.    On information and belief, consumers have relied upon, and are continuing to rely upon, the traditional size of the tins as the basis for making a purchasing decision and believe the tins contain the same traditional fill rather than the reduced slack-fill that they cannot see in the nontransparent tin.

26.    On information and belief, McCormick is selling and will continue to sell ground black pepper using these blatantly deceptive and misleading slack-filled tins.

## McCormick's Conduct Violates Federal and State Law

27.    Among other things, McCormick's actions constitute violations of the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); the Code of Federal Regulations Title 21 part 100, *et seq.*; the Lanham Act, 15 U.S.C § 1125; and Minnesota's Deceptive Trade Practices Act (Minn. Stat. § 325D.43 *et seq.*); California Unfair Competition and Business Practices Act (Cal. Bus. & Prof. Code § 17200 *et seq.*); and Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §§ 501.201, *et seq.*), as well as those similar deceptive and unfair practices and/or consumer protection state laws in all fifty states.

28.    Specifically, McCormick's actions violate 21 C.F.R. § 100.100, which prohibits nonfunctional slack-fill:

> In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading. (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

29.     Each of the fifty states has statutes that prohibit consumer fraud and deceptive business practices, including the following:

- Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1, *et seq.*;
- Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. Ann. §§ 45.50.471, *et seq.*;
- Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann., §§ 44-1521, *et seq.*;
- Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*;
- California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
- Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq.*;

- Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*.
- Delaware Prohibited Trade Practices Act, 6 Del. Code Ann. tit. 6, §§ 2511, *et seq*.;
- District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*.;
- Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq*.;
- Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq*.;
- Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §§ 481A-1, *et seq*.;
- Idaho Consumer Protection Act, Idaho Code §§ 48-601, *et seq*.;
- Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*.;
- Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-0.1, *et seq*.;
- Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq*.;
- Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-626, *et seq*.;
- Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §§ 365.020, *et seq*.;
- Louisiana Unfair Trade Practices and Consumer Protection Law, La. Stat. Ann. §§ 51:1401, *et seq*.;
- Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. tit. 5, §§ 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §§ 1211, *et seq*.;
- Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq*.;
- Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
- Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq*.;
- Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq*.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43, *et seq*.;
- Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;
- Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq*.;
- Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §§30-14-101, *et seq*.;

- Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301, *et seq.*;
- Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;
- New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq.*;
- New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*;
- New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*;
- New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;
- North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;
- North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.*;
- Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. §§ 4165.01, *et seq.*;
- Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751, *et seq.*;
- Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.*;
- Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1, *et seq.*;
- Rhode Island Unfair Trade Practices And Consumer Protection Act, 6 R.I. Gen. Laws §§ 6-13-1, *et seq.*;
- South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*;
- South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;
- Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104, *et seq.*;
- Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*;
- Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.*;
- Vermont Consumer Protection Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*;
- Virginia Consumer Protection Act, Va. Code Ann. §§59.1-196, *et seq.*;
- Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.*;
- West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101, *et seq.*;
- Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*;

- Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§40-12-101, *et seq*.

### McCormick's Conduct Has Resulted in Market Deception

30.     On information and belief, as a result of McCormick's blatantly misleading and deceptive use of traditional-sized, non-transparent metal tins with illegal slack-fill, retailers and consumers have been confused into believing the tins contain the same amount of ground black pepper.  This confusion is evidenced by nationwide retailer confusion.

31.     In marketing ground black pepper, grocery stores and other retailers often advertise the brand, price, and product weight on the price tags mounted on the grocery store shelves.  In many instances, McCormick acts as a "Category Captain" for retailers throughout the country.  As a Category Captain, McCormick is responsible for designing and managing the spice module layouts at a particular retailer, including the manner in which the different brands are stocked and marketed within the module by sizes and brands.

32.     The tin is a form of advertisement that, together with strategic placement on the shelf, is one of the most effective methods to induce sales.  When McCormick's slack-filled tins are positioned on a grocery store shelf next to competitors, including Watkins, McCormick tries to induce consumers to buy McCormick pepper because it appears – falsely – that the McCormick tin is equivalent to, or larger than, the Watkins tin and other competitors.

33.     As a result of McCormick's blatant decision to continue using the traditionally sized tins with a reduced fill and nonfunctional slack-fill, numerous retailers throughout the nation appear to be confused as well.  Many, if not most, of these victimized retailers have continued to display shelf labeling that incorrectly identifies the amount of ground black pepper in the McCormick tin, inadvertently adding to the deception of consumers.  The following are just a few of the examples from specific retailers throughout the nation:

**Minnesota**

34.     On or about May 30, 2015, a retailer in Minnesota sold McCormick ground black pepper in the traditional Large Tins, even though the tin contained 25% less ground black pepper, or 6 ounces of ground black pepper.  The shelf tag below the slack-filled tin inaccurately advertised 8 ounces of black pepper (the traditional fill amount).  *See* Photo E below (photo of McCormick slack-filled Large Tin in Minnesota with incorrect shelf tag).

**Photo E**



35.     On or about May 28, 2015, a different retailer in Minnesota sold McCormick ground black pepper in the traditional Small Tins and Medium Tins, even though the tins contained 25% less ground black pepper, or 1.5 and 3 ounces of ground black pepper, respectively.  The shelf tags below the slack-filled tins inaccurately advertised 2 ounces and 4 ounces of ground black pepper (the traditional fill amounts). *See* Photo F below (photo of McCormick slack-filled Small Tin and Medium Tin in Minnesota with incorrect shelf tags).

**Photo F**

**Kentucky**

36.     On or about June 1, 2015, a retailer in Kentucky sold McCormick ground black pepper in the traditional Medium Tins, even though the tin contained 25% less ground black pepper, or three ounces of ground black pepper.  The shelf tag below the slack-filled tin inaccurately advertised 4 ounces of ground black pepper (the traditional fill amount).  *See* Photo G below (photo of McCormick slack-filled Medium Tin in Kentucky with incorrect shelf tag).

**Photo G**



**California**

37.     On or about May 28, 2015, 2015, a retailer in California sold McCormick ground black pepper in the traditional Medium Tins, even though the tin contained 25% less ground black pepper, or 3 ounces of ground black pepper.  The shelf tag below the slack-filled tin inaccurately advertised 4 ounces of black pepper (the traditional fill amount).  *See* Photo H below (photo of McCormick slack-filled Medium Tin in California with incorrect shelf tag).

**Photo H**



38.    On or about May 28, 2015, 2015, a different retailer in California sold McCormick ground black pepper in the traditional Small Tins, even though the tin contained 25% less ground black pepper, or 1.5 ounces of ground black pepper.  The shelf tag below the slack-filled tin inaccurately advertised 2 ounces of black pepper (the traditional fill amount).  *See* Photo I below (photo of McCormick slack-filled Small Tin in California with incorrect shelf tag).

**Photo I**



39.     On or about May 29, 2015, 2015, a retailer in California sold McCormick ground black pepper in the traditional Small Tins and Medium Tins, even though the tins contained 25% less ground black pepper, or 1.5 ounces and 3 ounces of ground black pepper, respectively.  The shelf tags below the slack-filled tins inaccurately advertise 2 ounces and 4 ounces, respectively (the traditional fill amounts).  *See* Photo J and Photo K below (photo of McCormick slack-filled Small Tin and Medium Tin in California with incorrect shelf tags).

**Photo J**    **Photo K**

 

**Florida**

40.     On or about May 30, 2015, a retailer in Florida sold McCormick ground

black pepper in the traditional Small Tins, even though the tin contained 25% less ground

black pepper, or 1.5 ounces of ground black pepper.  The shelf tag below the slack-filled

tin inaccurately advertised 2 ounces (the traditional fill amount).  *See* Photo D.

**Photo D**

**Nationwide Retailers**

41.     In addition to these retailers, a number of large, nationwide retailers, have

suffered, and continue to suffer, from the same confusion.

**McCormick Website**

42.     Indeed, even as of the date of this Complaint, even McCormick's own

website continues to advertise ground black pepper units of 2 ounces, 4 ounces and 8

ounces, blatantly continuing the confusion and deception.

<u>**COUNT I**</u>
**Violation of Section 43(a) the Lanham Act**
**(15 U.S.C. § 1125)**

43.     Watkins re-alleges the preceding paragraphs as though set forth fully

herein.

44.     McCormick has and continues to advertise, promote, market, and sell its

ground black pepper in packaging resulting in nonfunctional slack-fill.

45.     Watkins is a person engaged in commerce within the control of Congress

whose position in the marketplace has been damaged by McCormick's conduct.

46.     McCormick's conduct proximately caused an injury to Watkins'

commercial interest in sales or its business reputation.

47.     Section 43(a) of the Lanham Act provides:

"Any person who, on or in connection with any goods or services, or any
container for goods, uses in commerce any word, term, name, symbol, or
device, or any combination thereof, or any false designation of origin, false
or misleading description of fact, or false or misleading representation of
fact, which—(A)is likely to cause confusion, or to cause mistake, or to
deceive as to the affiliation, connection, or association of such person with
another person, or as to the origin, sponsorship, or approval of his or her

goods, services, or commercial activities by another person, or (B)in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

48.    McCormick's conduct constitutes unfair competition and misleading and deceptive advertising and promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.    McCormick's actions have been willful and in bad faith making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

50.    McCormick's conduct is causing, and will continue to cause, irreparable harm to Watkins unless McCormick is preliminarily and permanently enjoined by this Court.

51.    Watkins has suffered damages as a result of McCormick's misleading advertising and promotion in an amount in excess of $75,000 to be proven at trial.

## COUNT II
### Violation of Minnesota Deceptive Trade Practices Act
### (Minn. Stat. §§ 325D.44, *et seq.*)

52.    Watkins re-alleges the preceding paragraphs as though set forth fully herein.

53.    McCormick, in the course of its business, vocation or occupation, has and continues to advertise, promote, market, and sell its ground black pepper in packaging resulting in nonfunctional slack-fill.

54.     This conduct has caused, and is likely to continue to cause, confusion or

misunderstanding as to the quantities of goods.

55.     McCormick's actions violate Minn. Stat. § 325D.44, including but not

limited to Minn. Stat. § 325D.44, subd. 13.

56.     McCormick's actions also violate 21 C.F.R. § 100.100, which prohibits

nonfunctional slack-fill:

> In accordance with section 403(d) of the act, a food shall be deemed to be
> misbranded if its container is so made, formed, or filled as to be misleading.
> (a) A container that does not allow the consumer to fully view its contents
> shall be considered to be filled as to be misleading if it contains
> nonfunctional slack-fill.  Slack-fill is the difference between the actual
> capacity of a container and the volume of product contained therein.

57.     McCormick's advertising, promotion, marketing, and sale of ground black

pepper in nonfunctional slack-fill tins has proximately caused and continues to cause

harm to Watkins in the form of lost customers and consumer deception.

58.     McCormick has willfully engaged in the above-described trade practices,

knowing them to be deceptive.

59.     McCormick's deceptive acts and practices were directed at consumers.

60.     As a result of McCormick's conduct, Watkins is entitled to a temporary and

permanent injunction and attorneys' fees under Minn. Stat. § 325D.45.

### COUNT III
**Violation of California Unfair Competition and Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

61.     Watkins re-alleges the preceding paragraphs as though set forth fully

herein.

62.     McCormick has and continues to advertise, promote, market, and sell its products using nonfunctional, slack-fill tins.

63.     This conduct constitutes an unlawful, unfair and fraudulent business act or practice and unfair, deceptive or untrue or misleading advertisement and is likely to cause confusion or misunderstanding as to the quantities of goods in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*

64.     McCormick's actions also violate 21 C.F.R. § 100.100 and Cal. Bus. & Prof. Code § 12606.2 which, like federal law, prohibits nonfunctional slack-fill.

65.     McCormick's deceptive acts and practices were directed at consumers.

66.     As a result of McCormick's conduct, Watkins is entitled to an injunction enjoining McCormick's conduct pursuant to Cal. Bus. & Prof. Code § 17203.

67.     As a result of McCormick's above-described trade practices, Watkins has lost money in the form of lost sales from customers who were deceived or misled by McCormick's practices.

68.     Pursuant to Cal. Civ. Proc. Code § 1021.5, this action will result in the enforcement of an important right affecting the public interest warranting an award of attorney's fees.

## COUNT IV
### Violation of Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §§ 501.201, *et seq.*)

69.     Watkins re-alleges the preceding paragraphs as though set forth fully herein.

70.     McCormick has and continues to advertise, promote, market, and sell its products using nonfunctional, slack-fill tins.

71.     This conduct constitutes an unlawful and unfair method of competition and unfair or deceptive trade practice in the conduct of any trade or commerce in violation of Fla. Stat. Ann. § 501.201 *et seq.*

72.     Because Watkins has been aggrieved by McCormick's above-described conduct, Watkins is entitled to a declaratory judgment and injunctive relief to enjoin McCormick's present and future unlawful conduct pursuant to Fla. Stat. § 501.211(1).

73.     Watkins is further entitled to an award of its attorney's fees and costs pursuant to Fla. Stat. Ann. § 501.2105.

## COUNT V
## Unfair Competition

74.     Watkins re-alleges the preceding paragraphs as though set forth fully herein.

75.     McCormick's actions described above constitute unfair competition.

76.     Watkins has been damaged, and will continue to be damaged, as a result of McCormick's unfair competition in an amount to be proven at trial.

**WHEREFORE**, Watkins respectfully requests the Court to:

1.      Preliminarily and permanently enjoin McCormick and its officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, from:

    a.    continuing to sell, offer, or promote tins of ground black pepper with improper slack-fill, which appear to contain a greater volume of ground pepper than they actually contain;

    b.    further violations of the Lanham Act;

    c.    further violations of the Minnesota Deceptive Trade Practices Act, the California Unfair Competition and Business Practices Act, and the Florida Deceptive and Unfair Trade Practices Act; and

    d.    further acts of unfair competition.

2.    An award of three times Watkins' actual damages, pursuant to 15 U.S.C. § 1117(a);

3.    Award damages for McCormick's acts of unfair competition in an amount to be proven at trial;

4.    Award the reasonable attorneys' fees, costs, and expenses Watkins incurs in this action;

5.    Grant Watkins pre-judgment and post-judgment interest on Watkins' damages, as allowed by law; and

6.    Grant any other relief the Court deems just and equitable.

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Watkins

respectfully requests a trial by jury of all issues so triable.


Dated:  June 9, 2015

s/ Joseph T. Dixon, III
Joseph T. Dixon, III (MN # 0283903)
Todd Wind (MN # 196514)
Nicole M. Moen (MN # 0329435)
Anupama D. Sreekanth (MN # 0393417)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425
Telephone:  (612) 492-7000
Facsimile:  (612) 492-7077
jdixon@fredlaw.com
twind@fredlaw.com
nmoen@fredlaw.com
asreekanth@fredlaw.com

***Attorneys for Watkins Incorporated***


56090828